Stalcup v. The State.

Filed Nov. 6, 1891.

———————

No. 16,190.

STALCUP ·v. THE STATE.

CRIMINAL LAW.—*Larceny.*—*Sufficiency of Evidence.*—For evidence held sufficient to sustain a conviction for larceny of a horse, see opinion.

NEW TRIAL.—*Newly-Discovered Evidence.*—*Diligence.*—A new trial will not be granted on the ground of newly-discovered evidence where such evidence is merely cumulative, and no diligence is shown to have been used to ascertain and produce it at the trial.

From the Greene Circuit Court.

*W. F. Gallemore,* for appellant.

*A. G. Smith,* Attorney General, for the State.

OLDS, J.—The appellant was indicted for grand larceny, charged with the stealing of a horse, the property of one Nancy Custer, of the value of one hundred dollars. The cause was submitted to the court for trial. The defendant was found guilty, and sentenced to two years' imprisonment in the State prison.

The appellant filed a motion for a new trial, which was overruled, and exceptions reserved, and the ruling assigned as error.

It is contended by counsel for the appellant that the judgment ought to be reversed, for the reason that the evidence is insufficient to support the finding of the defendant guilty by the court.

The evidence shows that the horse was taken from where it was fastened at a church in the town of Bloomfield, about 7 o'clock in the evening ; that parties saw it taken, and the person was immediately pursued, and some two miles from the place from where the horse was taken, and near another church, called Bethel Church, the horse was found loose in the highway, warm and tired. Three persons followed in pursuit of the horse and the person taking it. They testify to having ridden very rapidly, and that the roads were muddy, and they made considerable noise.

There is an abundance of evidence identifying the appellant as being in the town of Bloomfield on that evening, and at the church about the hour the horse was taken. Indeed, he admits being there, and a number of persons identify him as the person who unloosed the horse, by unsnapping the hitching-strap and leaving it tied to the hitching-post or fence, and getting upon the horse and riding it away ; the witnesses being at the time but a short distance from appellant, and some of them immediately notified the person who

had ridden the horse to the church and hitched it, and he and two others immediately made pursuit to recover the horse.

There is also no controversy about the fact that appellant was at Bethel Church, near where the horse was found, when the persons in pursuit reached there. And a number of witnesses testify that he came in late, and but a short time before those in pursuit reached the place.

The appellant testifies in his own behalf, and denied having taken or ridden the horse, or having any knowledge of its being taken.

When the persons in pursuit reached Bethel Church some of their number went into the church during the services and invited one or two persons out, and they came out; that the appellant, without invitation, followed the others out, and on inquiry being made about who came into church late, appellant stated, in substance, that he could prove how he came there, though there seems to have been no charge made against him at that time. The fact of taking the horse in such a public manner, and riding it the distance which it was ridden, and turning it loose, of itself might indicate that the object in taking the horse was solely for the purpose of riding it to the Bethel Church, and turning it loose without any real intent to commit a larceny. But, on the other hand, though the evidence is seemingly conclusive as to the identification of the appellant, he denies having taken the horse, and the fact that quick and rapid pursuit is made by three young men, making considerable noise, affords strong proof that the defendant, though having intended to commit a larceny of the horse, and starting at a rapid gait to make good his escape, finding himself pursued, abandoned the horse and entered the church to avoid detection.

The evidence is of such a character as to support a conviction, and can be best weighed and the proper conclusions reached by the trial court. The judge of that court in hearing the evidence looks into the face of all the witnesses, including that of the appellant when testifying in his own be-

half, and it is a case illustrating the soundness of the long-established rule of this court, that where there is evidence in support of the verdict it will not weigh the evidence, as this court has merely the recorded statements of the witnesses, without any of the other tests which may add to, or take from, the mere statement of a witness. We can not reverse the judgment on account of the insufficiency of the evidence.

. A new trial is also asked on account of surprise and newly discovered evidence.

There is no merit whatever in the application on these reasons. It is shown that two witnesses who would, if they had been present, have testified to facts having some materiality, were at work over in the State of Illinois, and in correspondence with them they agreed to be present, either to be in the county, at their father's the evening before the trial, or come to the trial on the 10 o'clock A. M. train on the day of the trial. Relying alone upon their promises, knowing they were not present, appellant went into the trial without any effort to get their testimony, or any application for delay or continuance. It would not do to grant new trials for such reasons. The appellant had the right to have this evidence if he had used diligence. He used no diligence, and abandoned his right to have their testimony, and took his chances on getting it by relying on their promise.

The newly discovered evidence is merely cumulative, but no diligence whatever is shown to have been exercised toward ascertaining and producing it upon the trial.

There is no error in the record.

Judgment affirmed.

Filed Nov. 4, 1891.